UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SMART & ASSOCIATES LLC d/b/a SMART BEVERAGE GROUP     PLAINTIFF

v.     CIVIL ACTION NO. 3:10CV-614-S

INDEPENDENT LIQUOR (NZ) LTD., et al.     DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the court on motion of the plaintiff, Smart & Associates, LLC d/b/a Smart Beverage Group ("SBG") for partial summary judgment (DN 31), and on motion of the defendants, Independent Liquor (NZ) Ltd., *et al.*, (collectively, "Independent"),[1] to dissolve the temporary restraining order issued by the Jefferson County, Kentucky, Circuit Court (DN 26) in this case.

SBG filed suit against Independent[2] in the Jefferson County, Kentucky, Circuit Court in August of 2010 alleging breach of contract and breach of the implied warranty of merchantability in the performance of the parties' agreement for SBG's purchase and resale of alcoholic drink shots manufactured by Independent. SBG obtained a temporary restraining order from the state court prohibiting Republic Bank from honoring a claim by Independent for $124,687.50 under the Letter

---

[1] Republic Bank has been named in this action as the provider of an Irrevocable Standby Letter of Credit securing SBG's transactions with Independent. It was joined in order for SBG to seek a restraining order prohibiting Republic from honoring a claim by Independent under the Letter of Credit. Therefore, reference to the collective entities as "Independent" does not include Republic Bank.

[2] SBG names Independent Liquor (NZ) Ltd., Flavored Beverage Group Holdings, Ltd., and Independent Distillers USA as defendants. Independent Liquor (NZ) Ltd. was acquired by Flavored Beverage Group Holdings, Ltd. in November, 2007. There is no further reference to Independent Distillers USA in the Complaint beyond its identification as a Delaware Corporation doing business in California and Kentucky.

of Credit. Independent removed the action to this court under our diversity jurisdiction and asserted a counterclaim for the $124,687.50 which it claims remains due and owing, as well as other as yet undetermined damages. Independent now seeks to have this court dissolve the retraining order, and SBG seeks judgment on one aspect of its claim for breach of contract.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

It is undisputed that SBG and Independent entered into a Distribution Agreement on April 28, 2006, and that Agreement terminated in November 2007 when Independent was sold to Flavored Beverage Group Holdings, Ltd. The Distribution Agreement recited that SBG is in the business of buying alcoholic products from producers and selling them to licensed wholesale distributors;

Independent is in the business of producing alcoholic beverages for sale. Distrib.Agr., Recitals (A); (B). In this agreement, Independent appointed SBG as its sole distributor in the United States of its "Twistee Shots." Distrib.Agr., ¶¶ 2, 3; First Schedule. SBG was required to "pay for all stock purchased from Independent within 30 days of despatch [sic] (from the Bill of Lading date) from the port of despatch [sic] under an Irrevocable Letter of Credit." Distrib.Agr., ¶ 5.3.

The parties continued to do business for a number of years after the termination of the Agreement, apparently without a subsequent written agreement. SBG executed a number of Letters of Credit to guarantee its payments, as required by Independent. Payment terms were expanded to 60 to 90 days with later shipments of goods.

In May, 2009, SBG and Independent exchanged a number of e-mails concerning a shipment to SBG of spoiled product. Independent apparently determined that there were 8,587 cases of spoiled product shipped at a value of $244,729.50. SBG urges that it paid for the defective product, but that Independent replaced only 4,212 cases, having unilaterally decided to "net the exchange rate loss against the value of the replacement stock owed to [SBG]" for losses Independent claimed to have suffered as a result of SBG's late payments between December 2008 and March 2009. Independent contends that the late payments caused the company to lose in excess of $190,000.00 due to the devaluation of the U.S. Dollar against the New Zealand Kiwi while SBG was approximately $830,000.00 in arrears during that period.

On October 9, 2009, Republic Bank & Trust Company ("Republic") issued the Irrevocable Standby Letter of Credit in issue in this case to Independent on behalf of SBG securing an aggregate sum of $400,000.00.

On December 8, 2009, SBG was notified by Independent that SBG would no longer be the U.S. importer for Independent.

On March 23, 2010, SBG withheld $124,687.50 from its payment to Independent of a final balance of $168,181.50 invoice for new merchandise.  SBG contends that it offset the value of the replacement stock which Independent withheld.  SBG also contends in this action that Independent shipped cases of out-of-date product, but it is unclear from the record whether SBG made any demand for replacement of those goods.

On August 13, 2010, Independent submitted a written demand to Republic on the Letter of Credit in the sum of $124,687.50 for the withheld amount.  Republic has not paid under the Letter of Credit, as it was temporarily restrained by the Jefferson County, Kentucky, Circuit Court from honoring Independent's demand for payment.  That restraining order remains in effect at the present time, and  Independent has moved for its dissolution.  (DN 26).

SBG contends that Independent's demand under the Letter of Credit is improper as it seeks in effect to recover the "exchange rate loss" which Independent unilaterally imposed on SBG.  SBG urges that neither the Distribution Agreement nor the parties' subsequent course of dealing permit Independent to recoup purported losses in dollar value for conversion of Dollars to Kiwis.  SBG notes that it was always billed in U.S. Dollars and paid in U.S. Dollars.  In any event, Michael C. Smart, Member/Manager of Smart & Associates, LLC d/b/a SBG, avers that from 2006 until the end of SBG's business arrangement with Independent, "SBG made timely and consistent payments to [Independent]."  Smart Aff., ¶ 3.

Smart's November 4, 2011 deposition testimony appears to contradict this averment.  Independent contends that between December 2008 and March 2009,  SBG was more than

$830,000.00 in arrears in its payments, resulting in a substantial loss due to the devaluation of the U.S. Dollar against the New Zealand Kiwi. At his deposition, Smart was shown a number of Independent's spread sheets and a summary sheet purporting to reconcile losses due to late payments on SBG's account, credit and/or replacement of defective product, and amounts owed on new orders. (Smart depo., Ex. 46) Smart testified concerning the summary that

> I had a discussion with Peter McHugh. I would assume I had several discussions with Peter McHugh about this subject, basically objecting to – I mean, *not arguing with the fact of the payment dates*, just objecting to the fact that suddenly the exchange rate issue, the fact that the exchange rate issue has jumped up and how that affects our business and how that affects our relationship in any of our documents. There is no basis for that... Obviously there is no issue with the facts of these numbers, the fact of what we owe and what we pay. There is really – you know, *we are not arguing the fact of when we paid it.*

Smart depo., pp 263-64 (emphasis added).

SBG has moved for partial summary judgment seeking an order which finds that Independent "[is] not entitled to payment of $124,687.50 from the letter of credit or otherwise." Tend. Ord., DN 31-15.

SBG postulates that Independent had no right to recoup any supposed loss due to the devaluation of the U.S. Dollar during the time SBG was in arrears in its payments to Independent. SBG urges that there was no provision for such recoupment in the Distribution Agreement and that such action was contrary to the parties' established course of dealing. However, there is a genuine issue of material fact concerning whether SBG had paid all sums due and owing to Independent. Further, SBG has cited *no law* concerning its asserted right to a judgment finding that Independent is not entitled to payment of $124,687.50.

Independent states that it only seeks to recoup SBG's past due payments for product purchased. Mo. to Dissolve, pp. 7-8.[3] In Answers to Interrogatories, Independent states that it is owed "approximately $125,000 for unpaid invoices..." (DN 38-3, Ans. to Interrog., No. 5). This "approximately $125,000" appears to refer to the $124,687.50 which Independent contends SBG "unilaterally offset...against INDEPENDENT's final bill..." and for which Independent has made a claim under the Letter of Credit. Resp. to SJ Mo., p. 5.

The parties clearly dispute the obligation underlying the $124,687.50. SBG urges that it paid for the spoiled product. It urges that Independent unilaterally and impermissibly offset its self-proclaimed 'exchange rate loss' by withholding replacement product valued at $124,687.50. SBG then admittedly deducted a corresponding amount from its payment on a future invoice, crediting itself for spoiled product for which it had received no replacement. From the outset, SBG disputed Independent's right to unilaterally offset its purported exchange rate loss, despite the fact that SBG admits that it paid its invoices late.

By contrast, Independent urges that it was entitled to offset a portion of the loss it suffered due to the devaluation of the U.S. Dollar against the Kiwi during the prior year, and that therefore, SBG improperly offset an amount which it owed for *new* product ordered and invoiced *after* Independent provided all replacement product to which SBG was entitled.[4] Independent thus urges the court to lift the retraining order to permit it to recover the amount withheld by SBG, and to deny SBG's motion for partial summary judgment.

---

[3] This is, or course, no more than argument of counsel in a brief.

[4] Independent further claims in this action that SBG made commitments to its distributors concerning replacements and credits which SBG failed to honor and that Independent was forced to honor in its stead. It claims additional damages not in issue in this motion.

SBG has admitted that it paid its bills late over a period of approximately 8 months prior to the spoiled product issue. Independent created a document purportedly establishing its "loss" over that 8-month period of time. The document is wholly unauthenticated. Independent has not substantiated the "loss," nor has it articulated a basis upon which it offset this "loss" by withholding replacement of spoiled product. Independent attempts to offer the document as undisputed by SBG. However, it simply presented the document to Smart at his deposition and asked if he had any reason to doubt the numbers. Smart responded that SBG was not denying when and what it paid on its account. SBG does dispute that Independent could unilaterally offset an "exchange rare loss" by withholding replacement products.

In support of its motion to dissolve the restraining order, Independent has offered a letter dated April 28, 2010 from its New Zealand attorneys responding to SBG's counsel prior to the filing of this action. This letter is, of course, not evidence in the case, but rather a recitation of facts given outside of litigation. In that letter, Independent's counsel stated that

> In early 2009 our client shipped 8,587 cases of defective product and has had numerous communications with your client about them. Those cases were replaced at our client's expense with 1136 cases in September and 2520 and 1692 cases, both of new stock, in November. By prior agreement with your client, the 1136 cases were treated as 852 cases of product because they were short dated. When our client agreed to provide your client with additional replacement stock, your client was informed that 3523 cases would not be replaced in order to compensate our client for the losses it sustained due to your client's failure to comply with our client's credit conditions as a result of which our client sustained losses due to exchange fluctuations. Ultimately, our client bore about 50% of that loss.

DN 26-3.

Assuming, *arguendo*, that counsel's recitation is accurate, Independent has failed to cite any law to support its exercise of this self-help remedy. Independent urges that its exchange rate loss claim is "legally tenable," citing, generally, a number of cases and treatises which suggest that

factors such as currency fluctuation may be considered in seeking to make a creditor whole. (DN 38, pp. 7-8). This authority does not appear to support Independent's unilaterally imposed setoff, however.

The dispute over whether Independent is entitled to be compensated for loss incurred due to SBG's delayed payments is an issue to be addressed in this case. But Independent's demand under the Letter of Credit for the amount it claims is outstanding on SBG's account raises another question. The state court enjoined Republic Bank from honoring Independent's demand under the Letter of Credit. (DN 1-5). That court issued a restraining order without opinion. Upon removal, we address afresh whether injunctive relief is proper in this case.

We start from the premise that upon removal to this court, "all injunctions, orders and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the District Court." 28 U.S.C. § 1450.

As noted in *Langley v. Prudential Mortgage Capital Company LLC,* 554 F.3d 647 (6th Cir. 2009), "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, [555 U.S. 7], 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)."

SBG has failed to meet its burden to establish that it is likely to succeed on the merits. It has offered nothing more than an intuitive argument that since the contract did not provide for an "exchange rate loss," such a remedy is therefore unavailable to Independent under any circumstance. This ill-defined argument fails to account for SBG's late payments, no matter how large the

delinquency or how long the delay. Without any principled argument or citation to legal authority, SBG has failed to establish that it is likely to succeed on its claim concerning the $124, 687.50.

In any event, the court finds that the paramount purpose of the Letter of Credit is best served by declining to enjoin Republic Bank from honoring the claim. The court recognizes that

> [t]he very object of a letter of credit is to provide a near foolproof method of placing money in its beneficiary's hands when he complies with the terms contained in the letter itself...Parties to a contract may use a letter of credit in order to make certain that contractual disputes wend their way towards resolution with money in the beneficiary's pocket rather than in the pocket of the contracting party. Thus, courts typically have asserted that such letters of credit are "independent" of the underlying contract...And they have recognized that examining the rights and wrongs of a contract dispute to determine whether a letter of credit should be paid risks depriving its beneficiary of the very advantage for which it bargained, namely that the dispute would be resolved while he is in possession of the money [citations omitted]...[T]he "fraud in the transaction" exception is available only where the beneficiary's conduct has "so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation would be no longer served. [citations omitted].

*Itek v. First National Bank of Boston*, 730 F.2d 19, 24-25 (1st Cir. 1984). *See also, Aetna Life and Casualty Co. v. Huntington National Bank*, 934 F.2d 695, 702 (6th Cir. 1991)("We need not decide whether fraud in the strict common law sense is required to establish "fraud in the transaction." At a minimum, however, it is necessary that the issuer show intentional fraud.").

In *Langley*, *supra*, Judge Moore explained in concurrence that

> [A] bank's duty to pay on letters of credit is independent of whether or not the applicant...and the beneficiary...have performed on the underlying contract. *White & Summers, supra,* § 26-2, at 138. In other words, the bank "must pay on a proper demand from the beneficiary even though the beneficiary may have breached the underlying contract with the applicant." *Id.*...Most important, the "independence principle" is threatened if courts are willing to enjoin payment of letters of credit not just in exceptional cases involving fraud, but in ordinary contract disputes as well. As this court has explained elsewhere:

> There are important policy reasons for upholding the validity of the documents without reference to the underlying agreements. The letter of credit's primary value to the financial world is reliability...

*Security Fin. Group., Inc., v. N. Ky. Bank & Trust, Inc.*, 858 F.2d 304, 307 (6th Cir. 1988). When courts are too willing to enjoin payment of letters of credit, the independence principle is weakened because parties must look not only at the "paper transaction" embodied in the letters but also at the underlying contracts.

*Langley*, 554 F.3d at 649-50.

The court concludes that under the facts of this case, the temporary restraining order should be dissolved. This is essentially a garden variety contract dispute. SBG has not shown "fraud in the transaction." SBG urges that Independent's action was not contemplated by the parties' contract or course of dealing. However, Independent's claim for payment clearly arises from the very business arrangement which was secured by the Letter of Credit. Rather than "vitiating the entire transaction," Independent's conduct arises from the very heart of the obligation of SBG to pay for product received according to the terms of the parties' agreement *and* SBG's admitted failure to pay according to those terms. The very protection to be afforded Independent by the Letter of Credit would be rendered a nullity if SBG was permitted to further impede payment to Independent on its claim while the parties litigate payment issues under the parties agreement.

Finally, in this instance, an injunction is not warranted, as SBG's remedy at law is sufficient to render it full relief should it prevail. *See, Price v. Paintsville Tourism Commission*, 261 S.W.3d 482, 484 (Ky. 2008). This is nothing more than a question of contract law and remedies available to the parties to redress any breaches of their agreement.

For the reasons set forth herein, and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the plaintiff, Smart & Associates,

LLC d/b/a Smart Beverage Group, for partial summary judgment (DN 31) is **DENIED**, the motion of the defendants, Independent Liquor (NZ) Ltd., *et al*, to dissolve the restraining order (DN 26) is **GRANTED**, and the Temporary Restraining Order issued by the Jefferson Circuit Court is **DISSOLVED.**

**IT IS SO ORDERED**.

November 7, 2012

**Charles R. Simpson III, Judge**
**United States District Court**