UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.:3:10-CV-614-S
*Electronically Filed*

SMART & ASSOCIATES, LLC
d/b/a SMART BEVERAGE GROUP                      PLAINTIFF

v.

INDEPENDENT LIQUOR (NZ) LTD.;
FLAVORED BEVERAGES GROUP HOLDINGS, LTD.;
INDEPENDENT DISTILLERS USA; and
REPUBLIC BANK & TRUST COMPANY              DEFENDANTS

## INDEPENDENTS' OBJECTIONS TO SBG'S EVIDENCE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Pursuant to FRCP Rule 56(c)(2)[1], Moving Parties Independent Liquors (NZ) Ltd., Flavored Beverages Group Holdings, and Independent Distillers USA (collectively "*INDEPENDENT*") object to evidence submitted by SBG in opposition to the Motion for Summary Judgment as follows:

*INDEPENDENT* was unable to find any declaration of counsel authenticating the deposition transcripts attached as exhibits to SBG Opposition, and objects to such evidence (deposition transcripts) on that basis (Lack of Authentication- FRE 901)

---

[1] See *Sigler v. American Honda Motor Co.* (6th Cir., 2008) 532 F 3d 469, 480 – objections to declarations or other evidence should be ruled upon by court before ruling on *Motion* itself

| Document, Evidence to Which Objection is Made | Basis Of Objection | Ruling On Objection |
|---|---|---|
| **I. Michael C. Smart Declaration in Opposition [Ex'19'to Opposition]** | | |
| In the spring of 2009, SBG was notified by some of its wholesaler customers that certain ILNZ products, specifically its "Twistee Shots," were defective because the cream portion had coagulated. This was all product shipped to SBG in 2008. (*Smart Declaration*, ¶ 5) | Hearsay- FRE 801&802 | Sustained: _____ Overruled: _____ |
| MHW took an inventory of SBG's stock of Twistee Shots, which showed that 4,021 cases of the 8,587 cases of defective product originally shipped by ILNZ remained in MHW's warehouse. See May 4, 2009 receipt showing, in the aggregate, 4,021 cases of defective product (shown by matching the product code to those codes set out in the spreadsheet sent by Leanne Byers in Exhibit 1, supra), attached hereto as Exhibit 2. (*Smart Declaration*, ¶ 8) | Lack of Personal Knowledge (of SBG or Smart)-FRE602; Hearsay- FRE 801&802;Lack of Authentication (of Ex '2' to Smart Declaration) by MHW- FRE 901; Ex '2' inconsistent with Smart characterization | Sustained: _____ Overruled: _____ |
| The 8,587 cases of Twistee Shots were unsaleable and, therefore, once the remaining 4,021 cases in MHW's warehouses were identified as unsaleable, SBG was forced to destroy the same. (*Smart Declaration*, ¶ 9) | Lack of Personal Knowledge/Foundation: of SBG or Smart)-FRE 602; "unsaleable" is conclusory averment; Hearsay-FRE 801&802; Ex '2' does not reflect how 4021 cases determined; Lack of Personal Knowledge Foundation (of Bruce Herman as to testimony in Ex '3')-FRE 602; | Sustained: _____ Overruled: _____ |

2

| | | |
|---|---|---|
| The seven-day notice provision in the Distribution Agreement was never enforced by ILNZ and was at all times impractical given the structure of SBG's distribution scheme, of which ILNZ was aware. (*Smart Declaration*, ¶ 11) | Irrelevant absent prior occasion(s) for IL(NZ) to enforce- FRE 401; Lack of Personal Knowledge/Foundation: of what IL(NZ) was aware)- FRE 602 | Sustained: _____ Overruled: _____ |
| Because ILNZ has confirmed that it shipped 8,587 cases of defective product to SBG and MHW confirmed that it had 4,021 of those cases remaining in May of 2009, approximately 4,566 cases of defective product were shipped to SBG's wholesalers. (*Smart Declaration*, ¶ 12) | Misstates Leann Byers' Emails (Ex '1' to Smart Declaration); Lack of Authentication/Foundation (as to 2 spreadsheets- IL000141&IL000145) by Byers- FRE 901; Hearsay as to what MHW confirmed-FRE 801&802; Lack of Personal Knowledge/Foundation: (as to what MHW confirmed)-FRE 602 | Sustained: _____ Overruled: _____ |
| Also during late 2008 and into 2009, ILNZ shipped product to SBG's warehouse that was out of proper rotation. Specifically, ILNZ sent product coded with an earlier "Best Before" date than what was already out on the market. SBG clients refused to accept product with an earlier "Best Before" date than what they already had in stock, again leaving SBG with unsaleable product. (*Smart Declaration*, ¶ 13) | Lack of Personal Knowledge/Foundation: [that these cases were 'out-of- proper rotation' when shipped by Il(NZ)]- FRE602;Hear-say (as to clients refusing to accept product with an earlier 'Best Before' date) - FRE 801&802; Lack of Foundation (of SBG or Smart that product *unsaleable* absent notice to IN(NZ) and opportunity to identify markets where product coded with an earlier 'Best Before' date had not been sold )-FRE 602 | Sustained: _____ Overruled: _____ |

3

| | | |
|---|---|---|
| In July and August, 2010, MHW destroyed approximately 8,709 cases of either defective or out-or-rotation product that had been shipped to it by ILNZ pursuant to its distribution agreement with SBG because such products were unsaleable. (*Smart Declaration*, ¶ 14) | Lack of Foundation & Hearsay (of SBG or Smart that product *unsaleable*) – FRE 602,801; Lack of Personal Knowledge Hearsay that product destroyed by MHW)-FRE 602, 801 | Sustained: _____ Overruled: _____ |
| The destruction of the 8,709 cases of defective or out-of-sequence product cost SBG at least $3,744 in disposal fees, less tax credits. (*Smart Declaration*, ¶ 15) | Hearsay(FRE 801&802) and Lack of Required Written Evidence of Alleged Cost (FRE 1002-1004); Irrelevant (as to Smart Deposition testimony [142: 16-21; Ex '6' to his Declaration; "out of code" as of July, 2010 not same as 'Out-of-Rotation'] | Sustained: _____ Overruled: _____ |
| The cost of the 8,709 cases was approximately $32.50 per case, or $280,342.50, which sold, on average, for $48.00 per case, or $418,032.00. This represents approximately $137,689.50 in lost profits in addition to the initial cost of $280,342.50. (*Smart Declaration*, ¶ 16) | Lack of Personal Knowledge Foundation: (of SBG or Smart as to 2 page spreadsheet – Exhibit '5' to Smart Declaration)-FRE 602; Lack of Authentication (of Ex '5' to Smart Declaration by MHW) - FRE 901; Hearsay (as to Ex '5' of Smart Declaration) - FRE 801&802 | Sustained: _____ Overruled: _____ |
| As of February 5, 2010, SBG had issued $268,245.00, representing approximately 5,159 cases of either defective or out-of-rotation product, in credits to its various distributors, who had received such defective or out-of-rotation product. (*Smart Declaration*, ¶ 17) | Irrelevant ('credits' SBG ***issued*** but failed to honor irrelevant to prove damages) - FRE 401 | Sustained: _____ Overruled: _____ |

4

| Exhibit | Objection | Ruling |
|---|---|---|
| Michael Howard Expert Report – Ex '38' to SBG Opposition | Improper Foundation for Expert Opinion – FRE 702 | Sustained: _____ Overruled: _____ |
| Ex '5' to SBG Opposition – May 15th, 2006 letter from MHW to SBG | Irrelevant - FRE 401; Lack of Authentication (letter is not executed) by MHW- FRE 901 | Sustained: _____ Overruled: _____ |
| Ex '10' to SBG Opposition – "*PowerPoint*" Presentation to CSTS at July 9th, 2008 Meeting | Lack of Foundation (that INDEPENDENT prepared) – FRE 602 | Sustained: _____ Overruled: _____ |
| Ex '13' to SBG Opposition- Draft Agreement in conjunction with prospective *Joint Venture* transaction which was never consummated | Irrelevant – FRE 401 | Sustained: _____ Overruled: _____ |
| Ex '14' to SBG Opposition- Draft Agreement in conjunction with prospective *Joint Venture* transaction which was never consummated | Irrelevant – FRE 401 | Sustained: _____ Overruled: _____ |
| Ex '16' to SBG Opposition- Emails in conjunction with prospective *Joint Venture* transaction never consummated | Irrelevant – FRE 401 | Sustained: _____ Overruled: _____ |
| Ex '19' to SBG Opposition- Emails in conjunction with prospective *Joint Venture* transaction never consummated | Irrelevant – FRE 401 | Sustained: _____ Overruled: _____ |
| Ex '18' to SBG Opposition- Draft Agreement in conjunction with prospective *Joint Venture* transaction which was never consummated | Lack of Foundation (unexecuted draft agreement) – FRE 602 | Sustained: _____ Overruled: _____ |
| Ex '20' to SBG Opposition - [same as Ex '1' to Smart Declaration] | Lack of Authentication, Foundation (as to 2 spreadsheets- IL000141&IL000145) by Byers- FRE 901 | Sustained: _____ Overruled: _____ |

| | | |
|---|---|---|
| Ex '22' to SBG Opposition - "*PowerPoint*" Presentation at April 29th, 2008 Meeting | Lack of Foundation (as to preparation, dissemination) – FRE 602 | Sustained: _____ Overruled: _____ |
| Ex '23' to SBG Opposition | Lack of Authentication, Foundation (as to spreadsheet- IL000125) by Byers- FRE 901 | Sustained: _____ Overruled: _____ |

Dated: April 10, 2015

Respectfully submitted,

ADLESON, HESS & KELLY, APC

By: *[signature]*
Jeffrey A. Baruh
Attorneys for INDEPENDENT

# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.: 3:10 CV-614-S

SMART & ASSOCIATES, LLC
d/b/a SMART BEVERAGE GROUP

PLAINTIFF

v.

INDEPENDENT LIQUOR (NZ) LTD.;
FLAVORED BEVERAGES GROUP HOLDINGS, LTD.;
INDEPENDENT DISTILLERS USA; and
REPUBLIC BANK & TRUST COMPANY

DEFENDANTS

**EXHIBIT "A" – OBJECTION TO EXHIBIT "38" TO SBG'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT – MICHAEL HOWARD'S EXPERT REPORT**

*FRE Rule* 702 provides:

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (b) the testimony is based on sufficient facts or data."

*FRE Rule* 702 (hereafter "*Rule 702*") was amended in response to the US Supreme Court's decision in *Daubert v Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and the numerous cases applying *Daubert*, specifically including *Kumho Tire Co. v Carmichael* 119 S.Ct., 1167 (1999). In *Daubert*, the Supreme Court charged trial judges with responsibility as "gate keepers" to exclude unreliable expert testimony. In *Kumho*, the Court clarified that this "gate keeper" responsibility applies to all expert testimony, not just testimony based in science. *Kumho Tire v Carmichael, supra*, 119 S.Ct., at 1178. The amendment to *Rule 702* rejects the premise that an expert's

1

testimony should be treated more permissibly simply because it is outside the realm of science. (*Advisory Committee Notes*- 2000 Amendment to *Rule 702*). *Rule 702* calls for a quantitative rather than qualitative analysis. The amendment requires that expert testimony be based on sufficient underlying "facts or data". *Id.*

Attached to the Supplemental Declaration of Jeffrey A. Baruh (hereafter "*Baruh Supp. Dec"l*") are excerpts of the deposition of SBG's disclosed expert, Michael Howard. The only document Howard reviewed before offering his expert report (Exhibit 38 to the SBG Opposition) was the "actual filing" (22:6-10). Howard was unsure if the "actual filing" was SBG's initial or amended complaint (22:6-20) and did not have copies of whatever pleading he had reviewed at his deposition (27:11-16).

Howard never reviewed the parties' *Distribution Agreement* until the morning of his deposition (69:19-25; 71:10-11; 73:2-7). At that, before he testified, Howard reviewed only the two recital paragraphs ("A" & "B") at the beginning of the *Agreement* and section 9 of the *Agreement* (73:2-74:11). Howard did not review either of the two *Confidentiality Agreements* (138:23-139:23).

Howard did not know if SBG had confidentiality or non-disclosure agreements with its employees (172:14-18), its brokers (173:7-174:4) or with MHW (175:18-176:3).

Howard never reviewed the information SBG provided to *INDEPENDENT* (Bruce Herman) in the fall 2009 under the *Second Confidentiality Agreement* (203:24-204:4), and did not know what use IDUSA made of that information (199:17-25).

Howard did not know whether, or to what extent, IDUSA retained or replaced SBG's distributors after SBG was terminated or what type of distributorship incentive programs SBG had in effect with its distributors (167:15-168:13).

2

Howard testified that his <u>opinions were not based on any information he received from SBG's attorneys, specifically including Ken Sales, or anyone else related to the case</u> (20:8-17); confirming he had no communications with Mike Smart relevant to the opinions he formulated. (28:2-5).

Given Howard's testimony, what underlying facts or data on which Howard based his opinions is hard to imagine. Under any analysis, the quantum of whatever "underlying facts or data" Howard did consider before authoring his expert report was patently insufficient - far under the minimum threshold of sufficiency required under *Rule 702*.

Dated: April 10, 2015

Respectfully submitted,

ADLESON, HESS & KELLY, APC

By: ___/s/ Jeffrey A. Baruh___
Jeffrey A. Baruh  jbaruh@ahklaw.com
Adleson, Hess & Kelly, APC
577 Salmar Avenue, 2nd Floor
Campbell, CA 95008
T: (408) 341-0234
F: (408) 341-0250
*Counsel for Defendants/Cross-Complainants Independent Liquors (NZ), Ltd., Flavored Beverages Group Holdings, Ltd., and Independent Distillers USA*

3

## **CERTIFICATE OF SERVICE**

I hereby certify a true and correct copy of the foregoing was delivered to all the following parties of record by ECF filing rules this 10th day of April, 2015.

Gregory J. Bubalo  gbubalo@bubalolaw.com
Kenneth L. Sales  ksales@bubalolaw.com
Leslie M. Cronen  lcronen@bubalorotman.com
Bubalo Goode Sales & Bliss
9300 Shelbyville Road, Suite 215
Louisville, KY 40222
*Counsel for Plaintiff, Smart & Associates, LLC d/b/a Smart Beverage Group*

B. Scott Jones, Esq.  sjones@reminger.com
Reminger Co., LPA
730 W. Main Street, Suite 300
Louisville, KY 40202
*Counsel for Defendants/Cross-Complainants*
*Independent Liquors (NZ), Ltd., Flavored Beverages Group Holdings, Ltd., and Independent Distillers USA*

/s/ Jeffrey A. Baruh
Jeffrey A. Baruh
jabaruh@ahklaw.com
Counsel for Defendants/Cross-Complainants Independent Liquor (NZ), Ltd., Flavored Beverages Group Holdings, Ltd., and Independent Distillers USA